## In re GREENFIELD.

(District Court, E. D. Pennsylvania. January 29, 1912.)

### No. 3,928.

1. BANKRUPTCY (§ 330*)—CLAIMS—PROOF—EVIDENCE.

Where claimant in bankruptcy proceedings chose not to rely on the presumption of correctness of his claim, raised by the formal proof thereof, but attempted to strengthen it by the testimony of himself and another, which was relevant to the issue, and such testimony overthrew the presumption of correctness, he took the risk of his undertaking, and was bound by the result.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 330.*]

2. BANKRUPTCY (§ 340*)—CLAIMS—MONEY LOANED—EVIDENCE.

Evidence held sufficient to sustain but a small part of a claim for money alleged to have been loaned to the bankrupt by his son.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of bankruptcy proceedings of Abraham Greenfield. On claim by the trustee in bankruptcy of Charles Greenfield. Order of referee, disallowing claim, except in part, affirmed.

Wellington M. Bertolet, for trustee.
Percival H. Granger and J. Howard Reber, for claimant.

J. B. McPHERSON, District Judge. This certificate presents for review the correctness of an order rejecting nearly all the items of a claim made by the trustee of Charles Greenfield, who is the bankrupt's son, and is himself a bankrupt.

I may first observe that the proof of claim declares the debt to be for—

"moneys advanced to the said Abraham Greenfield by the said Charles L. Greenfield, of which advances a true and correct statement is hereto attached and marked Exhibit A."

This exhibit is headed "Account of Abraham Greenfield on Books of Charles L. Greenfield," and its unsatisfactory character will best appear by copying it in full:

1910
| Dec. | 9 | A. G. | check protested P. | 41 | #6638 | Chgd. | to C. L. G. | | $112.50 |
|---|---|---|---|---|---|---|---|---|---|
| | 14 | " | " " " | 43 | 4829 | " | Loss & Gain | | 132.00 |
| | 15 | " | " " " | 43 | 4835 | " | " " | " | 39.75 |
| | 16 | " | (C. L. G.) | 45 | | " | C. L. G. | | 490.00 |
| | 20 | " | check protested | 45 | | " | Loss & Gain | | 114.60 |
| | 22 | " | " " | 49 | | " | " " | " | 41.25 |
| | 22 | " | C. L. G. Strat | 49 | 4858 | " | C. L. G. | | 100.00 |
| | 23 | " | C. L. G. | 49 | | " | " " | | 75.00 |
| | 27 | " | Loss | 49 | | " | Loss & Gain | | 317.00 |
| | 27 | " | for notes | 49 | 4863 | " | " " | " | 527.00 |
| | 27 | " | " " | 49 | | " | " | " | 550.00 |
| | 29 | " | check protested | 51 | 4868 | " | " " | " | 114.75 |
| | 29 | " | Strat & Myerson | 51 | 4869 | " | " " | " | 102.10 |
| | 29 | " | Note | 51 | 4873 | " | " " | " | 200.00 |
| | 29 | " | C. L. G. Strat | 51 | 4874 | " | C. L. G. | | 100.00 |
| | 30 | " | C | 51 | | " | Loss & Gain | | 330.00 |
| | 31 | " | for notes | 51 | | " | " " | " | 850.00 |
| 1911 | | | | | | | | | |
| Jan. | 3 | " | C | 53 | | " | " " | " | 375.00 |
| | 4 | " | Dasch & G. Note prot | 53 | 4899 | " | " " | " | 240.71 |
| | 5 | " | check protested | 53 | 4905 | " | " " | " | 114.75 |
| | 5 | C. L. G. | | 53 | 4908 | " | C. L. G. | | 100.00 |
| | 6 | A. G. | (for note) | 53 | | " | Loss & Gain | | 310.00 |
| | 6 | " | Cash | 53 | | " | " " | " | 296.45 |
| | 7 | " | " | 55 | | " | " " | " | 235.50 |
| | 12 | C. L. G. Mar. Com. | | 55 | 4921 | " | C. L. G. | | 100.00 |
| | 12 | A. G. | (for note) | 55 | | " | Loss & Gain | | 350.00 |
| | 14 | " | Cash | 55 | | " | " " | " | 280.00 |

$6598.06

A number of these items are not intelligible without explanation, but no explanation is offered by the proof of claim. Moreover, some of them refer to checks or notes, while neither these instruments nor copies (if copies would suffice) are attached to the proof, as required

by section 57, clause (b), and their absence is not accounted for. That clause is as follows:

"Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim. If such instrument is lost or destroyed, a statement of such fact and of the circumstances of such loss or destruction shall be filed under oath with the claim. After the claim is allowed or disallowed, such instrument may be withdrawn by permission of the court upon leaving a copy thereof on file with the claim." Act July 1, 1898, c. 541, 34 Stat. 560 (U. S. Comp. St. 1901, p. 3443).

The question is at once suggested whether such proof of claim as the foregoing is entitled to the presumption of validity referred to in Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584; but I do not decide the case upon this point, and only speak of it in passing, without intimating an opinion thereon.

The case under consideration suggests another question, namely, whether Whitney v. Dresser applies to a situation where the proof of claim is sworn to by a person who makes the affidavit, not upon the primary knowledge which a creditor himself may be fairly supposed to possess, but upon secondary evidence such as the information to which the trustee of a bankrupt creditor is ordinarily confined. In other words, while an ex parte affidavit by one having personal knowledge of the facts is to carry a presumption of validity, shall a similar presumption be extended to an affidavit made by one who is only repeating information obtained from others? This point also is passed without decision or intimation of opinion.

[1] The facts here are that the claim was objected to by Abraham Greenfield's trustee, and that the objections were heard. Two witnesses only were examined, Charles Greenfield and Abraham Greenfield; and it does not appear from the referee's report whether they were called on behalf of the claimant or of Abraham's trustee. If they were called by the latter, the situation is simple. A proof of claim presumptively correct was offered, the objector produced oral testimony in opposition, and a decision was rendered against the presumption. But the case has been argued upon the assumption that the two witnesses were called by the claimant himself, and I shall decide it from that point of view. In my opinion it makes no difference who called the witnesses. The testimony was relevant to the issue, and if it overthrew the presumption of correctness I do not perceive why it should be rejected or ignored, on the ground that the claimant himself saw fit to offer it. If he chose not to rely upon the presumption, but to try to strengthen it, he took the risk of such an undertaking, and must abide by the result.

[2] The total effect produced by the sworn proof of claim, and by the oral evidence that was offered to support it, will be seen by the following extract from the referee's report:

"The rest of the claim I am satisfied is bogus. The bankrupt says nothing about it in his schedules, and in his testimony can remember practically nothing. He has repeatedly said that his whole investment in trade did not much exceed $5,000, and he has shown where that money came from. That his son could have paid out for his benefit and accommodation nearly $6,000, and the bankrupt have no glimmer of recollection about it, taxes the imagina-

tion of the most credulous. His testimony in support of the claim, excepting the portion allowed, is utterly worthless. We come now to Chas. Greenfield's testimony. He attempts to tell the whole bead roll of the loans and payments he made on his father's behalf. He swears he made them, and to deny him charges him with perjury. Yet I cannot help feeling that he did protest too much. The impression he made upon me was that of an untruthful witness. His memory was too good, and his appearance too candid. He is a young man, barely 30, with naturally very limited opportunity for the amassing of wealth. He has himself become bankrupt, showing his want of capital. And he wants us to believe that he had nearly $6,600 which he could pay out in cash in a period from December 9, 1910, to January 14, 1911—36 days—on behalf of his father, whose whole stock in trade was not much over $5,000, whose business was failing, and against whom a petition in bankruptcy was filed on December 24th, and all this within a month of his own bankruptcy. Such filial affection and sacrifice is beyond belief. Where did he get the money? To state the question is to answer it. He never had it. I am willing to believe he might have been able to meet his five checks of $112.50 each, and I will believe that he sold his father $39.75 worth of goods on credit, for there is some corroboration to this; but I will go no farther.

"Even if this were not enough to bar the claim, another objection might suffice. The notes which Charles says he lifted and the checks he met are not made part of the claim. He says they were left in his store, and that the trustee must have them somewhere. The excuse is gray with age. The truth, in my judgment, is they never existed. If they did, the trustee would have them and produce them. Charles' trustee relies entirely upon a book of entries kept by Charles in which the items of this claim are charged. No affidavit of the loss of the notes appears with the claim. I cannot leave this part of the subject without remarking on the strange fact that neither was this book offered in evidence to show the original entries, nor did Charles' trustee appear to support his claim. It is worthy of remark that the claimant himself, having a claim of nearly $6,600 to make good, in whose possession the proofs of the claim should be, or who should account for them if lost, does not think enough of his claim to appear and assert it in person."

I fully agree with this finding, and direct that the order complained of be affirmed.